PIERCE, Judge.
This is an appeal by Ronald David Hooper, defendant below, from an order entered by the lower Court on July 28, 1969, denying his application for post-conviction relief.
The history of the litigation is not particularly salutary but it is interesting as pointing up a classic factual situation as to which the post-conviction Rule was never intended to be utilized. On March 19, 1969, information was filed in the Highlands County Circuit Court charging Hooper with the second degree murder of one William Morrison by hitting him with “a piece of pipe”. On April 14, 1969, after due inquiry under oath in open Court, Hooper was adjudged insolvent and a local Public Defender was appointed to represent him. On April 21, 1969, Hooper was arraigned upon the information, and upon his plea of not guilty his trial began before a jury on April 24, 1969. Four witnesses testified for the State, whereupon the State rested. Motion for directed verdict by the defendant was denied and defendant Hooper thereupon testified in his own behalf. The defense then rested and the State announced there would be no rebuttal.
After a recess for lunch the proceedings resumed in the Court room, and before summations to the jury began Hooper and his counsel announced to the Court that he desired to withdraw his .plea of not guilty and enter a plea of guilty to manslaughter, which was agreeable to the State. Extended discussion ensued on the part of the defendant, the Court, and respective counsel. Finally, the Court granted the defendant’s said motion, adjudged him guilty of manslaughter, and entered judgment and sentence accordingly.
No direct appeal was taken, but on July 8, 1969, 'Hooper filed in the trial Court his post-conviction motion under CrPR 1.850, 33 F.S.A., alleging in substance that during a recess of his trial he was “taken aside by his Court appointed counsel” and advised that “it would be to his best interest if he changed his plea to guilty”, that “if found guilty by a jury he would receive the maximum sentence prescribed by law of life imprisonment”, that it was “under the influence of this advice” that he entered the guilty plea to manslaughter, and that such plea of guilty was thereupon “entered due to the influence and coercion of his Court-appointed counsel.” Upon denial of said motion, Hooper has appealed to this Court and contends here that such order of denial should be reversed in that the record of the trial proceedings does not show that the entry of the guilty plea *259 to manslaughter was voluntary and was knowingly and intelligently made.
Because the record of the proceedings in open Court at the time the plea was entered so clearly and convincingly refutes Hooper’s contention, we deem it appropriate to here set forth the essential excerpts therefrom, occurring immediately after the trial convened in open Court after lunch and in the absence of the jury, as follows:
“MR. MACBETH (Asst. State Attorney) : Your Honor, the Defendant has indicated a willingness to withdraw his plea of not guilty and enter a plea of guilty to the lesser included offense of manslaughter and the State’s position on this thing is at this point there has been so much conversation with him during the course of the trial about this, I know Mr. Sprott talked to him. I am not sure whether any of the other Public Defenders talked to him at all, but I wouldn’t want to be in the position where he could say everybody was talking him into it. I know his relatives have been with him and each time he — he indicated before, I understand, that he was not guilty and wouldn’t plead guilty.
THE COURT: I wouldn’t worry about that at all in view of the questions he would have to answer before it is over. The point is we have the evidence in the case to back it up. It is not like where nobody had testified in this case. The Court heard the testimony.
MR. MACBETH: I would have no objections to it, then.
THE COURT: If he pleads he will get 20 years.
MR. SPROTT (Asst. Public Defender): I made that clear to him.
THE COURT: Then I think the State will be agreeable. It is a mutual proposal. I think it is fair on both sides.
MR. SPROTT: Comes now the Defendant and moves to be allowed to withdraw his plea of not guilty to the charge of second degree murder and permitted to enter a plea of guilty to the lesser included offense of manslaughter.
THE COURT: All right. Come up here.
Be sure and don’t let the Jury come out during this. If he changes his mind, I will not let anything interfere with the trial proceeding.
Now, Ronald David Hooper, you have just heard the announcement made by your attorney Mr. Kingswood Sprott, who is present today along with the Public Defender himself, Mr. Horton, from Lake Wales. You have been in conference with both the Public Defender and the Assistant Public Defender about this matter.
THE DEFENDANT: Yes, sir.
THE COURT: Is it your sister that is with you today?
THE DEFENDANT: Yes, sir, and brother-in-law.
THE COURT: Have you been in conference too with them about this matter ?
THE DEFENDANT: Yes, sir.
THE COURT: With reference to your entering the plea of guilty to manslaughter?
THE DEFENDANT: Yes, sir.
THE COURT: Now, it is going to be necessary for the Court to ask you certain questions and you must make truthful answers to all these questions.
Do you understand that you have a right to trial by a Jury or by the Court without a Jury of this case, you understand that, don’t you ?
THE DEFENDANT: Yes, sir.
THE COURT: In fact, we are in progress of the trial now so you know you have the right of trial by Jury.
And you know you are charged with second degree murder. In other words, *260 you are charged with killing William Morrison with a deadly weapon but without premeditation. You know that, don’t you? The charge has been explained to you over and over by the Public Defender’s Office, isn’t that right?
THE DEFENDANT: Yes, sir.
THE COURT: Manslaughter is a lesser included offense coming under the charge of second degree murder.
Now, how do you plead to this offense of second degree murder, first.
I asked how does he plead to this information and it is expected he will plead guilty to the lesser included offense. How does he plead to the second degree murder information ?
MR. SPROTT: The second degree murder charge, not guilty.
THE DEFENDANT: Not guilty.
THE COURT: First, there has been a Motion made to permit the Defendant to withdraw his not guilty plea to the second degree murder charge. That Motion is granted.
Do you plead guilty to the offense of manslaughter, a lesser included offense?
THE DEFENDANT: Yes, sir.
THE COURT: Is that what the Defendant has indicated to you, Mr. Sprott ?
MR. SPROTT: Yes, it is.
THE COURT: Make no mistake. He is not pleading guilty to second degree murder, but to manslaughter.
Do you understand you are pleading guilty to a felony, the maximum penalty for which is 20 years in the State Penitentiary ?
THE DEFENDANT: Yes, sir.
THE COURT: You understand you will get 20 years in the State Penitentiary?
THE DEFENDANT: Yes, sir.
THE COURT: At this time are you suffering from any pain or disability that keeps you from knowing what you are doing or saying ?
THE DEFENDANT: No, sir.
THE COURT: Have you ever been declared mentally incompetent or treated for mental illnesses or anything?
THE DEFENDANT: No sir.
THE COURT: Has anyone promised I will be easy if you go ahead and plead guilty ?
THE DEFENDANT: No, sir.
THE COURT: Have any promises or threats been made to induce you to plead guilty ?
THE DEFENDANT: No, sir.
THE COURT: Has anyone begged you and kept on and kept on to get you to plead guilty?
THE DEFENDANT: No, sir.
THE COURT: This is your free will ?
THE DEFENDANT: Yes, sir.
THE COURT: You arrived at the decision after, hearing the evidence in the case and after conferring with the Public Defender’s Office and your sister? .
THE DEFENDANT: Yes, sir.
THE COURT: After you were taken into custody by the officers, did you make a confession?
THE DEFENDANT: Yes, sir, they talked to me.
THE COURT: Well, do you feel like— did you give them a statement?
THE DEFENDANT: Yes, sir.
THE COURT: Were you told before you were questioned you had a right to remain silent and not answer any questions ?
*261 THE DEFENDANT: Yes, sir.
THE COURT: Were you told anything you said would be used against you ?
THE DEFENDANT: Yes, sir.
THE COURT: You were told you had a right to a lawyer and the right to have him with you while you were being questioned ?
THE DEFENDANT: Yes, sir.
THE COURT: Notwithstandnig having been told those various things, did you then freely and voluntarily go ahead and make a statement to the Officers?
THE DEFENDANT: I talked to them. They didn’t write it on a statement.
THE COURT: You didn’t give a written statement, you just talked to them?
THE DEFENDANT: Yes, sir.
THE COURT: Did they try to get a written statement from you?
THE DEFENDANT: No, sir.
THE COURT: They didn’t talk to you until after they told you you had the right to have a lawyer with you while you were being questioned?
THE DEFENDANT: Yes, sir, they said I had a right to a lawyer.
THE COURT: You told them you didn’t want a lawyer or didn’t need one?
THE DEFENDANT: Yes, sir.
THE COURT: Are you on probation or parole from any Court at this time?
THE DEFENDANT: No, sir.
THE COURT: In view of all the things that have been told and explained to you, do you still desire to plead guilty to manslaughter ?
THE DEFENDANT: Yes, sir.
THE COURT: And we have covered the fact of whom you have discussed it with, your sister and the Public Defender and the Assistant Public Defender, is that right ?
THE DEFENDANT: Yes, sir.
THE COURT: After what you have heard here today and otherwise being advised, you know that you are the one that killed William Morrison, don’t you? You know that to be true, is that right?
THE DEFENDANT: That’s right.
THE COURT: Do you feel your attorney has represented you well and faithfully?
THE DEFENDANT: Yes, sir.
THE COURT: Have you been fair and truthful in discussing this case with him?
THE DEFENDANT: Yes, sir.
THE COURT: Do you know of any reason at this time why you would like to discuss this case any more with your attorney before we close this hearing?
THE DEFENDANT: No, sir.
THE COURT: Mr. Sprott, as counsel for the Defendant, have you advised him as to his rights and done everything you know how to protect him in this respect?
MR. SPROTT: I advised him as fully as I am capable of.
THE COURT: Do you want to confer any further before we conclude the hearing?
MR. SPROTT: No, sir, I see no purpose in it.
THE COURT: The Court now adjudges the Defendant, Ronald David Hooper, to be guilty of the offense of manslaugther, a lesser included offense of the information 3141 to which he has plead guilty.
Now, do you have anything to say at this time why sentence should not be passed upon you?
THE DEFENDANT: Yes, sir.
*262 THE COURT: All right.
THE DEFENDANT: I think I was railroaded.
THE COURT: How?
THE DEFENDANT: By people lying on me.
THE COURT: In other words, you feel like there are witnesses today that lied?
THE DEFENDANT: Yes, sir.
THE COURT: But notwithstanding that, you have entered your plea of guilty and still it is your own free will, you are pleading guilty but still you think some of the witnesses lied, is that right?
THE DEFENDANT: Yes, sir.
THE COURT: Would you like to say anything else?
THE DEFENDANT: No, sir.
THE COURT: And you still desire to plead guilty notwithstanding these witnesses you say lied on you?
THE DEFENDANT: Well, there is nobody but me, your Honor.
THE COURT: I say you still desire to plead guilty notwithstanding these witnesses so-called lying?
THE DEFENDANT: Yes, sir.
MR. MACBETH: Is that the same as a plea of not guilty, your Honor?
THE COURT: He plead guilty. He just said that the witnesses lied on him.
MR. MACBETH: Well, it raises the question of whether he says he didn’t do it or not. He says the witnesses are lying. That indicates to me that he is saying he didn’t do it.
THE COURT: You see, the thing is this, Mr. Hooper, that’s what we have got a Jury here for, to determine who is telling the truth and who it not, the weight to be given to the testimony and the credibility of the witnesses. Who is lying and who tells the truth is strictly a matter up to this Jury. We have tried the case and it is to be submitted to the Jury. In fact, I am ready to charge the Jury. This idea of you having been railroaded and you having all this dirty work going on which you say is going on, that’s what we have a Jury for and the Court is reluctant to dispose of your case on a guilty plea when you feel like you have been railroaded.
THE DEFENDANT: I know they told things, your Honor, that wasn’t so.
THE COURT: What was that?
THE DEFENDANT: They told things that wasn’t so. But I am pleading guilty.
THE COURT: Regardless of what they said, you still want to plead guilty and are pleading guilty?
THE DEFENDANT: Yes, sir.
THE COURT: You want the case disposed of right now?
THE DEFENDANT: Yes, sir.
THE COURT: The Court finds this Defendant is an intelligent man and he is making the guilty plea knowingly and understandingly and with the advice of counsel which he has a right to do, and the State recommends the Court to accept the guilty plea which we have done.
Do you know of any reason why the Court should not pronounce sentence, Mr. Macbeth ?
MR. MACBETH: No, sir, I don’t.
THE COURT: Do you want to add anything in the record, Mr. Sprott?
MR. SPROTT: No, sir.
THE COURT: See, Mr. Hooper, we have made it clear and the Court has asked these questions, this act of you pleading guilty is your doing. It is not your sister or the Public Defender or anybody else. It is a matter between you and the Court, *263 frankly. It is a duty that I have to perform that no one else can do for me.
THE DEFENDANT: Yes, sir.
THE COURT: And my only advice is what I hear in the Court and my conscience and that should be yours in doing your duty, your conscience and what you have heard.
THE DEFENDANT: Yes, sir.
THE COURT: It is the judgment of the Court and the sentence of the law that you spend twenty (20) years at hard labor. You are committed to the Division of Corrections.
Let it go in the record I have previously appointed Mr. Kingswood Sprott, Attorney of Lakeland, as special Defender in this case.”
It is perceived that the able trial Judge patiently and indulgently, almost tediously, explained and expounded to Hooper, in the presence of all counsel in open Court, what his rights were and the possible consequences of the variable decisions he was privileged to make. There can be no doubt that Hooper knew exactly “where he stood” and that his decision to plead guilty to manslaughter was unfettered and uninfluenced by any promise or coercion by the Court or any expectation that the Court would “be light” on him. In fact, in an unprecedented gesture, the Judge, before accepting the plea, told Hooper exactly what his sentence would be if he pleaded guilty. So the claim of Hooper, almost three months after sentence, that he changed his plea to guilty “due to the influence and coercion of his Court appointed counsel” comes “too late with too little”.
His statement to the Court during the proceedings before the plea was accepted to the effect that “I think I was railroaded * * * by people lying on me” has no relevance whatever to the plea he entered. His plea of guilty put at rest any issue as to guilt or innocence.
Our affirmance of the order appealed finds ample support in the reported cases. Our recent opinion in Steinhauser v. State, Fla.App.1969, 228 So.2d 446, is in point on practically identical facts. See also our opinion in Manning v. State, Fla.App., 203 So.2d 360, the 3rd District cases of Chisholm v. State, Fla.App. 220 So.2d 383 and Richardson v. State, Fla.App., 202 So.2d 137, and the 4th District case of Lee v. State, Fla.App., 204 So.2d 245, all cited in Steinhauser. Other late cases are Dawson v. State, Fla.App.1969, 224 So.2d 388, Frizzell v. State, Fla.App.1969, 220 So.2d 32, and Haywood v. State, Fla.App.1969, 218 So.2d 242.
The order appealed is—
Affirmed.
HOBSON, C. J., and MANN, J., concur.